[Cite as *Waitt v. Kent State Univ.*, 2022-Ohio-4781.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Caitlyn Waitt et al., | : | |
| Plaintiffs-Appellees, | : | No. 22AP-167 |
| | | (Ct. of Cl. No. 2020-00392JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Kent State University, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2022

**On brief:** *Lynch Carpenter, LLP*, and *Jae K. Kim*; *The Law Offices of Simon & Simon*, and *James L. Simon*; *Bursor & Fisher, P.A.*, and *Josh Arisohn*; *Climaco Wilcox PECA & Garofoli Co., LPA*, and *Scott D. Simpkins*, *pro hac vice* for appellees. **Argued:** *Jae K. Kim.*

**On brief:** *Dave Yost*, Attorney General, *Randall Knutti, Peter Demarco, Jeanna Jacobus*, and *Lindsey Grant*, for appellant. **Argued:** *Peter Demarco.*

APPEAL from the Court of Claims of Ohio

McGRATH, J.

{¶ 1} This is an appeal by defendant-appellant, Kent State University ("KSU"), from a judgment of the Court of Claims of Ohio granting the motion for class certification filed by plaintiffs-appellees Caitlyn Waitt (individually "appellee Waitt") and Jordan Worrell (individually "appellee Worrell").

{¶ 2} Appellee Waitt is a Pennsylvania resident and student enrolled at KSU and she "paid to attend the Spring 2020 Semester at [KSU] as an undergraduate student." Appellee Waitt "paid out-of-state tuition for the Spring 2020 Semester." Appellee Worrell is an Ohio resident, who paid tuition and fees to attend KSU for the 2020 spring semester "through loans and payments on her behalf." (Second Am. Compl. at 3.)

{¶ 3} This case involves a "class action lawsuit on behalf of all persons who paid tuition and/or fees to attend [KSU] for an on-campus program for Spring 2020 Semester and had their access to campus and on-campus experiences and services interrupted and/or their course work moved to remote learning due to the novel Coronavirus Disease 2019" ("Covid-19").  Students at KSU "paid all or part of the tuition, or 'Instructional Fee,' for each semester * * * and mandatory fees for each semester including, but not limited to, a 'General Fee,' 'Legal Services Fee,' [']Career Services Fee,' 'Non-Ohio Resident Surcharge,' and 'Arts Fee.' "  (Second Am. Compl. at 1.)

{¶ 4} In response to Covid-19, KSU cancelled "all face-to-face classes as well as all campus events on March 10, 2020, implementing remote instruction starting on March 16, 2020."  Further, KSU "also stopped providing access to campus and many of the services or facilities the tuition and/or Mandatory Fees were intended to cover."  (Second Am. Compl. at 2.)

{¶ 5} Appellees alleged that KSU's "failure to provide the services which tuition and the Mandatory Fees were intended to cover since approximately March 10, 2020 is a breach of the express and/or implied contract between [KSU] and [appellees] and the Class * * * and is unjust."  Appellees further contend they "do not challenge [KSU's] compliance with the Covid-19 orders that were in place in the state of Ohio nor the quality of [KSU's] remote learning program"; rather, appellees "challenge [KSU's] decision to retain monies paid by [appellees] and the Class while refusing to offer any refunds, provide any discounts, or apply any credit to the accounts of [appellees] and the Class when [KSU] failed to provide the on-campus educational experiences and services that it promised."  (Second Am. Compl. at 2.)

{¶ 6} On June 17, 2020, appellee Waitt filed a complaint in the Court of Claims against KSU. On August 14, 2020, appellee Waitt filed an amended complaint against KSU. On May 24, 2021, appellee Waitt and appellee Worrell (collectively "appellees") filed a second amended class action complaint against KSU.  Appellees' complaint asserted causes of action for breach of contract (express or implied), and unjust enrichment (as an alternative to the breach of contract claim).

{¶ 7} On October 22, 2021, KSU filed a memorandum in opposition to appellees' motion for class certification.  On December 22, 2021, the Court of Claims held an oral, non-evidentiary hearing on the motion.

{¶ 8}   In a decision filed February 11, 2022, the Court of Claims held that appellees' proposed class, as stated at the class-certification hearing, satisfied the requirements for class certification by a preponderance of the evidence.  The proposed class was defined as: "All undergraduate students who paid an instructional fee, general fee, or non-resident fee for the Spring 2020 semester at [KSU] when classes were moved to remote learning. Excluded from the class are those undergraduate students who did not pay any fees." (Decision at 2.)

{¶ 9}   On appeal, KSU sets forth the following three assignments of error for this court's review:

> A. The trial court erred by certifying three separate classes, each of which contains numerous members who have sustained no injury at all.
>
> B. The trial court erred by refusing to reject the plaintiffs' expert reports—which contain the plaintiffs' only "common methodology" for determining which members of the classes have suffered an "injury in fact" and which members of the classes have not—because those reports are meaningless in the absence of the "survey" they have proposed but never conducted. The trial court also erred by refusing to consider [KSU's] expert reports, which fully rebut the "conjoint analysis" hypothesis the plaintiffs' experts attempt to make.
>
> C. The trial court erred by holding that common issues predominate over individual issues and that a class action is superior to individual actions.

{¶ 10}  KSU's assignments of error are interrelated and will be considered together. Under these assignments of error, KSU generally challenges the decision of the Court of Claims to grant appellees' motion for class certification, including arguments regarding the methodology employed by appellees' experts, and the court's analysis of the issues of commonality and superiority.

{¶ 11} In general, "[a] trial court has broad discretion in deciding whether a class action may be maintained, and that conclusion will not be disturbed absent a showing of an abuse of discretion." *Egbert v. Shamrock Towing, Inc.*, 10th Dist. No. 20AP-266, 2022-Ohio-474, ¶ 14, citing *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200 (1987), syllabus. An abuse of discretion connotes "more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable." *Marks* at 201.

However, the trial court's discretion in deciding whether to certify a class action "is not without limits and must be exercised within the framework of Civ.R. 23." *Egbert* at ¶ 15, citing *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70 (1998). As a trial court "does not have discretion to apply the law incorrectly[,] * * * courts apply a de novo standard when reviewing issues of law." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 38. *See also Lenoir v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-94, 2020-Ohio-387, ¶ 10 (Citations omitted.) ("Even under an abuse of discretion standard, * * * 'no court has the authority, within its discretion, to commit an error of law.' ").

{¶ 12} The Supreme Court of Ohio has observed that "class-action suits are the exception to the usual rule that litigation is conducted by and on behalf of only the individually named parties." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶ 25. In order "[t]o fall within that exception, the party bringing the class action must affirmatively demonstrate compliance with the procedural rules governing class actions." *Id.* Accordingly, "a party seeking certification pursuant to Civ.R. 23 bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 15. In this respect, "[a] preponderance of the evidence is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 54. Correspondingly, "[t]he trial court must carefully apply the requirements of Civ.R. 23 and conduct a rigorous analysis into whether those requirements have been satisfied." *Egbert* at ¶ 15, citing *Hamilton* at 70. *See also Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 20AP-217, 2021-Ohio-956, ¶ 10; *Felix* at ¶ 26; *Cullen* at ¶ 17.

{¶ 13} Ohio courts have held that "[a] 'rigorous analysis' often requires the trial court to 'look * * * into the enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims' * * * and 'consider what will have to be proved at trial and whether those matters can be presented by common proof.' " *Madyda* at ¶ 10, quoting *Felix* at ¶ 26, and *Cullen* at ¶ 17, citing 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1785 (3d Ed.2005). The trial court, however, "may consider the underlying merits of plaintiff's claims only to the extent necessary to determine whether the plaintiff has satisfied the requirements for class certification." *Weiman v. Miami Univ.*,

10th Dist. No. 22AP-36, 2022-Ohio-4294, ¶ 9, citing *Felix* at ¶ 26; *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 44. Further, "[i]n explaining a trial court's duty to conduct a rigorous analysis prior to certifying a class for litigation, the Supreme Court of Ohio has emphasized that the requirements are not ' "a mere pleading standard." ' " *Weiman* at ¶ 9, quoting *Felix* at ¶ 26, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

{¶ 14} In Ohio, "[t]he procedural aspects of class-action litigation * * * are controlled by Fed.R.Civ.P. 23 and Civ.R. 23, depending on whether the matter proceeds in a federal or state court in Ohio." *Felix* at ¶ 24. Thus, "[t]he Supreme Court of Ohio has endorsed consulting 'federal law interpreting the federal rule' as 'appropriate and persuasive authority in interpreting' Civ.R. 23." *Weiman* at ¶ 10, quoting *Felix* at ¶ 24.

{¶ 15} Civ.R. 23(A) sets forth the following four prerequisites for certification of a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and class.
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

{¶ 16} Additionally, "it must also be shown the action comes within the purview of at least one of three types of class actions described in Civ.R. 23(B)." *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984). In the instant case, appellees sought certification of their proposed class under Civ.R. 23(B)(3), which provides in part that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Civ.R. 23(B)(3) further provides:

The matters pertinent to these findings include:

(a) the class members' interests in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d) the likely difficulties in managing a class action.

{¶ 17} Although Civ.R. 23(B)(3) "sets forth a list of factors 'pertinent' to both the predominance and superiority findings," the list "is not exhaustive, and other relevant factors may also be considered." *Madyda* at ¶ 17, citing *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, ¶ 28, citing 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1777, 118 (3d Ed.2005).

{¶ 18} In *Madyda*, this court cited the seven prerequisites that must be met under Ohio law before a class may be properly certified:

(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named plaintiff representatives must be members of the class; (3) the class must be so numerous that joinder of all the members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three requirements for certification set forth in Civ.R. 23(B) must be met.

*Id.* at ¶ 11, citing *Hamilton* at 71, citing *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 96 (1988); Civ.R. 23.

{¶ 19} Further, "[t]he first two of the foregoing prerequisites 'are implicitly required by Civ.R. 23, while [the] five others are specifically set forth therein.' " *Id.*, quoting *Warner* at 94.

{¶ 20} KSU has contested the first prerequisite (i.e., arguing the proposed class is unidentifiable and overly broad), and further contends the Court of Claims did not rigorously analyze whether the damages alleged by appellees are ascertainable on a class-wide basis. Lastly, KSU argues appellees failed to meet their burden on the question of

commonality (Civ.R. 23(A)(2)), as well as the predominance and superiority requirements contained in Civ.R. 23(B)(3). For the following reasons, we find KSU has demonstrated the Court of Claims abused its discretion in failing to conduct a rigorous analysis as required for class certification.

{¶ 21} Under Ohio law, "[c]ertification pursuant to Civ.R. 23(B)(3) requires the trial court to make two findings: first, 'that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members' and, second, 'that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' " *Cullen* at ¶ 29. Such inquiry "requires a court to balance questions common among class members with any dissimilarities between them, and if the court is satisfied that common questions predominate, it then should 'consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior.' " *Id.*, quoting *Ealy v. Pinkerton Govt. Servs., Inc.,* 514 Fed.Appx. 299 (4th Cir.2013).

{¶ 22} In order " '[f]or common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must present a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication.' " *Id.* at ¶ 30, quoting *Marks* at 204. Accordingly, " ' "[t]o meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." ' " *Id.*, quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir.2012), quoting *Randleman v. Fidelity Natl. Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir.2011), citing *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 564 (6th Cir.2007). Further, "in determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." *Schmidt* at 313, citing Wright & Miller, *Federal Practice and Procedure*, Section 1779, 59 (1972).

{¶ 23} On appeal, KSU contends courts are required, at the certification stage, to assess whether a plaintiff's "alleged 'common methodology' is a 'just and reasonable inference' or simply 'speculative.' " (KSU Brief at 22.) KSU further argues trial courts have discretion in choosing how to analyze whether a proposed common methodology is just,

reasonable, and non-speculative, but that a court must conduct such analysis "*before* they certify any class that hinges on it." (Emphasis sic.) (KSU Brief at 24.)

**{¶ 24}** In a recent decision by this court, involving the same plaintiffs' experts and same methodology as presented in the instant case, we found that "the appellees' market-based damage theory and their experts' proposed analysis raises significant questions with respect to the commonality and predominance requirements for class certification." *Weiman* at ¶ 18. We find the same "significant questions" at issue in this case.

**{¶ 25}** In *Weiman*, we noted that " ' "[p]erhaps the most basic requirement to bringing a lawsuit is that the plaintiff suffer some injury." ' " *Id.*, quoting *Felix* at ¶ 36, quoting Schwartz & Silverman, *Common Sense Construction of Consumer Protection Acts*, 54 U.Kan.L.Rev. 1, 50 (2005). On this point, " '[a]lthough plaintiffs at the class-certification stage need not demonstrate through common evidence the precise amount of damages incurred by each class member, * * * they must adduce common evidence that shows all class members suffered some injury.' " *Id.*, quoting *Felix* at ¶ 33. Thus, " '[i]f the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damage calculations for each class member), there is no showing of preponderance under Civ.R. 23(B)(3).' " *Id.*, quoting *Felix* at ¶ 35.

**{¶ 26}** In the present case, as in *Weiman*, KSU "contested whether appellees presented sufficient proof of actual injury amenable to resolution on a class-wide basis," and thus "it was incumbent on the trial court to rigorously analyze at the class certification stage the validity of appellees' theory of damage and their experts' proposed analysis, even though that analysis would overlap in part with the merits of appellees' claims." *Id.* at ¶ 19. Here, a review of the transcript of the non-evidentiary oral hearing reflects the Court of Claims, similar to the circumstances in *Weiman*, "did not conduct the required rigorous analysis of appellees' theory of damages to determine if all class members suffered some injury." *Id.*

**{¶ 27}** During the non-evidentiary hearing in this case, counsel for appellees argued there were "really only about two issues that are truly in dispute here with respect to class certification, and that is whether Plaintiffs have shown a common injury and whether Plaintiffs have shown a method for calculated class-wide damages." (Tr. at 6.) Counsel for appellees asserted the common injury was that when appellees and the class paid for the spring 2020 semester, "what they paid for in part was access to [KSU] and access to in-

person and on-campus services and classes," and that the "inability to access those things is the common injury here." (Tr. at 6-7.) According to counsel, "[w]hat we're saying is that there's a market value difference between paying for access to campus and on-campus services and classes and an online class program with no access to campus." (Tr. at 7.)

{¶ 28} The court, in addressing the issue of expert testimony regarding the issue of damages, noted: "I don't know at this point in time, and it's not necessary for me to understand that for purposes of class certification, the issue of damages, even though it can be considered somewhat for purposes of class certification analysis, it's really left to a later point in time, and I'm trying to get to that later point in time." (Tr. at 12.)

{¶ 29} In responding to appellees' arguments, counsel for KSU asserted that "if there are injuries in fact, it is impossible to quantify * * * in one fell stroke, * * * in a common methodology, that is nonspeculative, and that after a rigorous analysis proves to be just and reasonable." (Tr. at 17.) Counsel for KSU argued during the hearing that appellees' "entire methodology for proving that in this case rests on experts who have yet to testify and yet to conduct the survey that forms the meat and the bones of their argument. So I'm not sure how you analyze an expert who hasn't even done the job." (Tr. at 18.) Counsel also argued the type of analysis proposed by appellees, "conjoint analysis," is "mainly used for consumer goods." (Tr. at 20.) Further, counsel maintained, "the Court can't certify a class until the methodology is before it, and the methodology isn't before it." (Tr. at 22.) Counsel for KSU also suggested "[t]his Court has all the right in the world to delay certifying this class until these surveys of whoever is being surveyed come in." (Tr. at 22-23.)

{¶ 30} In addressing this latter suggestion, the court stated:

> You know, I could do that, and that's what everybody wants me to do, is, well, let's just delay this process until 2022, 2023, and, as you know, I've told everybody, I want to keep this thing moving. I don't want to delay the process. We're going to go to the Ohio Supreme Court on the issue of class certification. We're going to go on to the Ohio Supreme Court on the issue of whether there was an implied contract, and we can't get there until we move these things along. Class certification doesn't have to be delayed for discovery, it doesn't. It doesn't have to be delayed for purposes of finding, you know, an expert to go out.

(Tr. at 23.)

{¶ 31} Counsel for KSU also made clear that "we challenge commonality, we challenge predominance and we challenge superiority." (Tr. at 25.) In addressing appellees' argument about "the on-campus experience," counsel for KSU asserted that such theory was based on "[m]arketing materials," and that appellees were in essence making "a promissory estoppel argument" for which "very few reliance-based cases * * * have been certified." (Tr. at 26.)

{¶ 32} Following the above arguments by counsel, the court then stated on the record:

> Now, you know, you talked a lot about damages and as the gatekeeper on scientific evaluations, I don't know the answer to whether the scientific evaluation is appropriate. That's why I've said let me hear it and I'll exercise my gatekeeper responsibility.
>
> The Plaintiffs have a very high burden in this particular case, and the high burden is to quantify the damages involved in this case. I don't know if they can do that, but my feelings at this point in time and have been throughout this entire process, I want to give them that opportunity and I want to get on with it. These students, probably by the time we try the merits of the case aren't going to be on campus anymore. They're going to be off somewhere.
>
> * * *
>
> But my concern is everybody keeps talking about the merits of the case. This is as simple a class action as I can find.

(Tr. at 31-32.)

{¶ 33} The court further observed: "I don't know how many more hearings of these -- I think I have 11 cases. I don't know how many more hearings we're going to have on this issue, but, quite frankly, you can read my decision from the other cases and my decision in this case isn't going to read a lot differently and the decision that's going to be released today isn't going to read substantially different from the ones I issued two weeks ago or three weeks ago." (Tr. at 33-34.)

{¶ 34} Following the above comments by the court, counsel for KSU again argued "[i]t does require a rigorous analysis of the scientific methodology, which isn't even in existence here, and that has to happen beforehand." (Tr. at 44.)

{¶ 35} In another class certification case involving analogous claims against a state university and involving the same market-based methodology, this court held that statements similar to the ones made by the court in the instant case (and quoted above) "indicate that the trial court believed all the university cases were the same and that it was not going to rule any differently on class certification in this case than it would in the other cases." *Weiman* at ¶ 22.

{¶ 36} Also similar to the circumstances in *Weiman*, the court in this case "relegated" the issue of damages "to its future merits ruling and expressly refused to consider it in determining whether to certify the class." *Weiman* at ¶ 24. As noted by KSU, the Court of Claims informed the parties during the hearing that it would certify the case before inquiring about the issue of "institutional fee" and "general fee." Specifically, after stating it was "going to certify the class in this particular case," the court inquired "does [KSU] have an instructional fee, a general fee?" (Tr. at 46-47.) Counsel for appellees responded: "As far as we understand it, it's an instructional fee, a general fee and a nonresident fee." (Tr. at 47.)

{¶ 37} We note that, in response to the proposed market-based survey methodology evidence (i.e., conjoint analysis) submitted by appellees' experts (Steven P. Gaskin and Colin B. Weir), KSU submitted an affidavit and report of Greg M. Allenby, Ph.D., the Helen C. Kurt Chair in Marketing at The Ohio State University's Fisher College of Business, who opined that the arguments advanced by Gaskin and Weir were unreliable. However, as in *Weiman*, the Court of Claims "refused to evaluate appellees' damage theory" despite KSU's argument that the methodology was flawed. *Weiman* at ¶ 24. *See also Keba v. Bowling Green State Univ.*, 10th Dist. No. 22AP-226, 2022-Ohio-4592, ¶ 23 (where university "argued that Keba's proposed damage theory (conjoint analysis) was fundamentally flawed because it ignored a number of important factors that could impact the market value of a collegiate educational experience * * * it was incumbent on the trial court to rigorously analyze at the class certification stage the validity of Keba's theory of damage and his expert's proposed analysis, even though that analysis would overlap in part with the merits of Keba's claims").

{¶ 38} In *Smith v. Ohio State Univ.*, 10th Dist. No. 22AP-125, 2022-Ohio-4101, this court also recently addressed a class action complaint against a university in which the plaintiff submitted a market research survey methodology, i.e., " 'conjoint analysis,' "

prepared by Gaskin and Weir. *Id* at ¶ 10. As in the instant case, "Gaskin had not conducted the survey since he had not been asked to do so; he proposed the conjoint analysis survey 'will be' pretested at some point." *Id.* at ¶ 13. In response to the report of the plaintiff's expert, the university submitted an expert report challenging the assumptions made by that methodology. In finding that the trial court erred in granting class certification, we held in part that the trial court, "in assuming an injury from the fact of closure and termination of in-person classes, did not assess these complicated and difficult considerations, particularly as they relate to whether [the plaintiff] presented *any* common evidence—or even a method to possibly determine—that class members suffered an economic injury considering the effect of the pandemic." (Emphasis sic.) *Id.* at ¶ 46. We further found, "[a]s demonstrated by statements during the oral hearing, the trial court did not believe that issues of merit should be considered at the class certification stage and sought to expedite defining a class in order to examine those merit[] issues at the next stage of litigation." *Id.* This court concluded, under such circumstances, "the trial court did not undertake a rigorous analysis with respect to the number and nature of individualized inquiries that might be necessary to establish liability with respect to both tuition and fees." *Id.*

{¶ 39} In the instant case, we find applicable language in *Weiman* that "even though the trial court's decision expressly found that appellees satisfied all the Civ.R. 23 requirements, the transcript of the hearing demonstrates that the trial court did not conduct a rigorous analysis of the commonality and predominance factors," and the court "failed to rigorously analyze whether appellees' theory of damages established that all members of the proposed class suffered some injury as required by *Felix,* and whether common issues predominate over individual issues." *Weiman* at ¶ 24. *See also Keba* at ¶ 25.

{¶ 40} Accordingly, we find merit with KSU's second and third assignments of error (designated in KSU's brief as assignments of error "B" and "C," respectively) challenging the Court of Claims' rigorous analysis of the Civ.R. 23 requirements, and we sustain those assignments of error. Further, because the error "permeated the trial court's reasoning throughout its decision," and in light of our disposition of the second and third assignments of error, we find the issues raised under the first assignment of error (designated in KSU's brief as assignment of error "A") to be "moot at this juncture." *Smith* at ¶ 48.

{¶ 41} Based upon the foregoing, KSU's assignments of error B and C are sustained, assignment of error A is rendered moot, the judgment of the Court of Claims of Ohio is reversed, and this matter is remanded to that court for further proceedings consistent with this decision and in accordance with law.

*Judgment reversed and cause remanded.*

LUPER SCHUSTER, P.J., and KLATT, J., concur.

————————————————